UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAVID KYLE DEARMAN** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-750** |
| | * | |
| **TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.** | * | **SECTION "L"(3)** |

## ORDER & REASONS

Before the Court are four motions filed in the above-captioned matter. After reviewing the relevant facts and applicable law, the Court rules as follows:

(1) Plaintiff, David Kyle Dearman's Motion to Strike Evidence (R. Doc. 81) is DENIED;

(2) Plaintiff's Motion to Strike Redundant Testimony (R. Doc. 103) is DENIED;

(3) Plaintiff's Motion in Limine to Strike Physician's Bankruptcy Records (R. Doc. 104) is GRANTED; and

(4) Plaintiff's Motion in Limine to Strike, Limit or Exclude Kenneth Boudreaux (R. Doc. 105) is DENIED.

## I.   BACKGROUND

This case arises from alleged personal injuries sustained while working aboard a vessel. Plaintiff, David Kyle Dearman, was employed by defendant Transocean Offshore Deepwater Drilling, Inc. ("Transocean"), as a seaman on the DISCOVERER DEEP SEAS, a drillship owned and operated by Transocean. On or about January 4, 2010, while working on this vessel, Plaintiff sustained back injuries while "pulling slips" during drilling operations. Plaintiff underwent a microdiscectomy performed by Dr. Rand Voorhies for his injuries. He has been prescribed pain medication since his operation by Dr. Michael Molleston.

-1-

On April 7, 2011, Plaintiff filed suit against Transocean pursuant to the admiralty and general maritime law of the United States, as modified by the Jones Act, and designated his action as one within the meaning of Federal Rule of Civil Procedure 9(h). (R. Doc. 1). Plaintiff alleges his injuries were the result of Transocean's negligence and the unseaworthiness of the DISCOVERER DEEP SEAS. He also alleges Transocean has failed to timely pay cure and adequately pay maintenance. Plaintiff seeks damages for: mental and physical pain and suffering, past and future; permanent disability; loss of wages, past and future; impairment of earning capacity; medical expenses, past and future; and punitive damages. Plaintiff later amended his Complaint to add an additional basis for subject matter jurisdiction pursuant to diversity of citizenship and requested trial by jury on all issues. (R. Doc. 5). Plaintiff also filed a Second Amended Complaint. (R. Doc. 24).

Transocean filed answers to the complaints, denying the allegations brought against it and raising a number of affirmative defenses. (R. Doc. 12, 24).

## II. PLAINTIFF'S MOTION TO STRIKE EVIDENCE

Plaintiff filed a Motion to Strike Evidence (R. Doc. 81), seeking an order from the Court striking surveillance videotapes of Plaintiff conducted by Transocean on the basis that the footage lacks authenticity, accuracy, reliability, completeness, as well as poses the threat of significant prejudice. Specifically, Plaintiff alleges: Transocean improperly conducted surveillance nine months after he underwent surgery; Transocean provided a highly-edited, partial version of the footage; and Transocean claimed privilege of the footage but provided it to several physicians involved in the litigation.

Transocean filed a Response in opposition to Plaintiff's Motion. (R. Doc. 100).

Transocean claims that the surveillance tapes at issue have been proffered to Plaintiff in full and free of editing. Transocean argues that the surveillance footage is relevant because it goes to the heart of Plaintiff's claims.

If evidence is "relevant" it is generally admissible, with relevance defined as having any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401, 402. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Plaintiff claims that while the surveillance footage may be relevant, this relevance is outweighed by the prejudicial effect of the heavily-edited footage which discredits the injuries sustained by Plaintiff and fails to present a whole, accurate portrayal of the Plaintiff's state. In response, Transocean argues that the video footage is not edited in anyway, and that the footage is highly relevant given that Plaintiffs claims he is unable to stand, bend, or walk, while the footage indicates otherwise. The Court finds that the surveillance footage is highly relevant to Plaintiff's claims, and according to Transocean, it is not improperly edited, alleviating any Rule 403 "danger."

Plaintiff also argues that the surveillance footage is inadmissible because it is not authenticated. Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Plaintiff claims that Transocean cannot authenticate the surveillance video because it is heavily edited and has not been submitted in its original format. In response, Transocean claims that the entirety of the

footage has been submitted and any inconsistencies in recording are the result of the investigator turning off the camera to move to another location where he could be concealed from the Plaintiff while filming; it submits an affidavit supporting these claims. Based upon this affidavit, the Court finds that there exists no authenticity issues with the surveillance video footage.

Finally, Plaintiff argues that Transocean cannot claim attorney-client or work product privilege for the surveillance video because it has already provided the video to at least four of its expert witnesses. Transocean does not appear to be raising any of these privilege arguments and it has supplied the video to Plaintiff.

For these reasons, this Motion is DENIED. Plaintiff will have the opportunity at trial, particularly cross-examination, to raise its concerns with the surveillance footage.

### III. PLAINTIFF'S MOTION TO STRIKE REDUNDANT TESTIMONY

Plaintiff filed a Motion to Strike Redundant Testimony (R. Doc. 103), seeking an order from the Court barring Transocean from presenting testimony of four of its physicians regarding the surveillance footage subject to the above-discussed Motion. Plaintiff argues that, aside from the surveillance footage being inadmissible on its own, for four different witnesses to comment on this footage would constitute needless presentation of cumulative evidence under Federal Rule of Evidence 403

Transocean filed a Response in opposition to Plaintiff's Motion. (R. Doc. 109). Transocean acknowledges that it provided all available medical records and the surveillance footage to its physician witnesses, as well as Plaintiff's treating physicians. However, Transocean argues that it was proper to provide this patient information, and it is appropriate for the testifying physicians to discuss the entirety of the material they reviewed in forming their

opinions. It denies that any of the physician testimony will be duplicitous.

Plaintiff invokes Federal Rule of Evidence 403 which permits the Court to exclude relevant evidence if its probative value is substantially outweighed by the danger of needless presentation of cumulative evidence. The Court finds that it is appropriate for Transocean's physician witnesses to explain the sources they relied upon in reaching their expert opinions. It is premature to strike any mention of the surveillance footage by these witnesses, especially since Plaintiff can raise its concerns with such testimony during trial. Accordingly, this Motion is DENIED.

### IV.  PLAINTIFF'S MOTION IN LIMINE TO STRIKE PHYSICIAN'S BANKRUPTCY RECORDS

Plaintiff filed a Motion in Limine to Strike Physician's Bankruptcy Records (R. Doc. 104), seeking an order from the Court preventing Transocean from introducing evidence regarding Dr. Michael Molleston's bankruptcy records on the basis that such evidence is irrelevant and will inflame and prejudice the jury.

Transocean filed a Response in opposition (R. Doc. 110), arguing that evidence of Mr. Molleston's bankruptcy records is admissible because it goes to his credibility, particularly whether he was recommending further treatment and care of Plaintiff based upon his medical opinion or his financial distress.

Plaintiff filed a Reply in further support of his Motion. (R. Doc. 113-1). Plaintiff argues that Transocean's claim that Dr. Molleston's bankruptcy records are relevant on credibility grounds is "absolutely ludicrous." Plaintiff asserts the Dr. Molleston is a professional who provided his professional opinion and his reputation should not be harmed for poor real estate investments he made four years prior and which had nothing to do with his treatment of the

Plaintiff. Finally, Plaintiff notes that Dr. Molleston could not have been motivated by profit to treat Plaintiff because he treated Plaintiff for over a year while Transocean refused further treatment for Plaintiff.

The Federal Rules of Evidence prohibit the introduction of irrelevant evidence. Fed. R. Evid. 402. The Court finds that Dr. Molleston's bankruptcy records are irrelevant to the present litigation. The argument that somehow Dr. Molleston's bankruptcy issues affected his treatment and diagnosis of the Plaintiff is too far attenuated from the issues in the case and unsupported by any evidence. Further, even if the bankruptcy records were relevant, their probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and/or misleading the jury. *See* Fed. R. Evid. 403.

## V. PLAINTIFF'S MOTION IN LIMINE TO STRIKE, LIMIT OR EXCLUDE KENNETH BOUDREAUX

Plaintiff filed a Motion in Limine to Strike, Limit or Exclude Kenneth Boudreaux. (R. Doc. 105). Plaintiff's Motion raises *Daubert* challenges to Mr. Boudreaux's expert economist testimony regarding Plaintiff's earning losses. Plaintiff argues that the methodology used by Mr. Boudreaux, income averaging, and his status as an economist, not vocational expert, prevents this expert testimony from meeting *Daubert* requirements. Plaintiff also complains that Mr. Boudreaux's expert report is absent of information regarding reliability of his methodology and notes the Western District of Louisiana previously excluded him as an expert on this basis. Finally, Plaintiff cites several cases in which the Camus Study used by Mr. Boudreaux has been stricken by the Fifth Circuit.

Transocean filed a response in opposition to Plaintiff's Motion. (R. Doc. 111). Transocean argues that Dr. Boudreaux's testimony should be introduced at trial because he is a

widely respected economist with over 40 years of experience teaching at Tulane, and his testimony, including that involving the challenged Camus Study, has widely been admitted by courts in this Circuit and even this Section. Transocean notes that Dr. Boudreaux relied upon the following in reaching his opinion: general information about Plaintiff; Plaintiff's income tax records; the report from Judith Lide; pay records from Transocean; and numerous peer-reviewed authorities. It claims that Plaintiff's disagreement with Dr. Boudreaux's estimate income calculations is not grounds for striking the evidence, especially since courts often calculate gross earnings at the time of the injury by estimating the earnings from past data. Transocean also denies that because Dr. Boudreaux is an economist and not a vocational expert he lacks qualifications to present his opinion on earning capabilities after an injury.

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Rule reflects the Supreme Court's decisions of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id*. at 595. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Id*. at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id*. (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chem., Inc*., 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has

utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id*. Nonetheless, the Court's role as a gatekeeper does not replace the traditional adversary system and the place of the jury within that system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). Furthermore, the Fifth Circuit has noted recognized that deference should be given to the jury's role as the proper arbiter of disputes between conflicting opinions. *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)(quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion, rather than its admissibility and should be left for the jury's consideration. *Id*.

In applying the foregoing law to the proposed expert testimony of Dr. Boudreaux, the Court finds that *Daubert* is satisfied and Dr. Boudreaux may testify at trial. Plaintiff argues without citing any support that Dr. Boudreaux, as an economist, is unqualified to offer an opinion on pre-accident earning capacity. Plaintiff also criticizes Dr. Boudreaux's use of income averaging as unsupported and unreliable methodology; however, as noted by Transocean, Dr. Boudreaux has supported this methodology with at least two peer-reviewed articles. Finally, Plaintiff opposes Dr. Boudreaux based upon his reliance on the Camus Study. While the Court recognizes the split in jurisprudence involving this study, it finds that the objection to the use of this study goes to the weight of the evidence as opposed to admissibility. Notably, any concerns and/or challenges Plaintiff has regarding Dr. Boudreaux's testimony may be raised during cross-

examination. Accordingly, this Motion is DENIED.

## VI.   CONCLUSION

For the foregoing reasons, IT IS ORDERED:

 (1) Plaintiff's Motion to Strike Evidence (R. Doc. 81) is DENIED;

(2) Plaintiff's Motion to Strike Redundant Testimony (R. Doc. 103) is DENIED;

(3) Plaintiff's Motion in Limine to Strike Physician's Bankruptcy Records (R. Doc. 104) is GRANTED; and

(4) Plaintiff's Motion in Limine to Strike, Limit or Exclude Kenneth Boudreaux (R. Doc. 105) is DENIED.

New Orleans, Louisiana this 10th day of February 2012.

_____
U.S. District Judge